IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHERYL NEW, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:17-cv-02379-PX |
| FAMILY HEALTH CARE, P.C., *et al.*, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Pending before the Court is Defendants Family Health Care, P.C.[1] and Dr. Monica Howard's (collectively, "Defendants") Motion for Summary Judgment. ECF No. 32. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Defendants' Motion for Summary Judgment is GRANTED.

**I.  Background**

Plaintiff Cheryl New was employed as a Medical Assistant by Defendant Family Health Care, P.C. ("FHC"), a private medical practice, from November 2010 to January 15, 2016. ECF No. 1 ¶¶ 3–9, 23. New's duties included administering shots, supplying correct doses of medications, and assisting with routine medical examinations. *Id.* ¶ 8. Defendant Dr. Monica Howard is a licensed physician in family medicine and one of FHC's five physician-owners. ECF No. 32-5 ¶ 1. In 2014, Dr. Howard became FHC's managing officer. *Id.*

On both Christmas Eve and New Year's Eve in 2015, FHC closed early, although neither day had been previously scheduled as a holiday for the office. ECF No. 32-5 ¶ 15. FHC still paid its hourly wage employees for a full eight hours of work for each of the days. *Id.*

New contends that FHC "manipulated" her time sheets on these two days by crediting

---

[1] Plaintiff incorrectly named Defendant as Family Healthcare, Inc. ECF No. 32 at 1.

eight hours of work instead of giving her four hours of holiday pay, which would have resulted in her receiving compensation for hours marginally in excess of eight per day. ECF No. 32-7 at 16–18, 22–24.

On January 11, 2016, New emailed FHC administrator, Kevin Day, noting this concern. ECF No. 32-11 at 5. Day responded that the change was to ensure that all employees "would get paid for their regularly scheduled hours" even though the office closed early. *Id.* Several days later, on January 14, 2016, FHC Practice Administrator, Marie Grimes, emailed New regarding an "accusation" New had purportedly made that morning "in front of several staff members" concerning time sheet changes. ECF No. 37-2 at 1. New responded to Grimes that no "accusations" were made and that, rather, several employees were discussing informally the changes made to their time sheets for the Christmas Eve and New Year's Eve hours. *Id.*

Late in the afternoon on that same day, January 14, a patient arrived at FHC to receive a Toradol injection. ECF No. 32-8 ¶ 2. New accompanied the patient to a treatment room and took the patient's vital signs. ECF No. 32-6 (patient log note written by New). New observed that the patient "was experiencing a severe headache/migraine" and had "notably elevated" blood pressure. *Id.* Because the patient had never taken Toradol before, New asked the patient to wait in the office for thirty minutes after administering the injection "[a]s a safety precaution . . . to ensure that she did not experience any adverse reactions." *Id.*; *see also* ECF No. 32-7 at 6 (New referring to the practice as a "rule if someone's never had a medication before"). New brought the patient's husband to the examination room to wait with her, and New returned to taking calls. ECF No. 32-6. At 5:31 p.m., New clocked out and left for the evening. *Id.* The patient and her husband remained alone in the empty office. ECF No. 32-7 at 9–10.

About an hour after New clocked out, she received a text message from a co-worker that

2

"the patient had contacted the after-hours line saying that they . . . were still in the office." *Id.* at 10. New returned "to the office within minutes," but the patient had left by the time New arrived. ECF No. 32-6. New called the patient's husband and scheduled a follow-up appointment with Dr. Wollman-Rosenwald for the next morning. *Id.* Dr. Wollman-Rosenwald was informed about this incident that same evening and immediately phoned Dr. Howard. ECF No. 32-8 ¶ 2. The two physicians agreed that the nurse responsible for abandoning the patient should be terminated for "gross dereliction of duty and the potential harm to the patient and the practice." *Id.* ¶ 3.

The following morning, on January 15, 2016, Dr. Wollman-Rosenwald learned that New was the nurse who left the patient unattended. The doctor directed New "to write a Log Note to the official patient file" to document the incident. *Id.* ¶ 6. Dr. Wollman-Rosenwald also discovered that New had failed to inform her of the patient's high blood pressure at the time of injection. *Id.* ¶ 4. Needing the consent of a majority of the five physician-owners to terminate New's employment, Dr. Wollman-Rosenwald emailed the other owners at 8:27 a.m., obtaining unanimous agreement by noon. *Id.* ¶ 5; *see also* ECF No. 32-9.

That same morning, around 8:41 a.m., New emailed Grimes on FHC's internal messaging system and attached a letter detailing her concerns about the "changes" made to her time sheets on December 24 and 31. ECF No. 32-11 at 1; *see also* ECF No. 32-5 ¶ 12. Although New copied Dr. Howard on the email, Dr. Howard "did not see or read" the email that day "or at any time before this suit was filed." ECF No. 32-5 ¶ 12. At the time the physician-owners agreed to terminate New's employment, none of them were aware of New's wage complaint. *Id.* ¶ 14; *see also* ECF No. 32-8 ¶ 9; ECF No. 32-12 ¶ 5; ECF No. 32-13 ¶ 4; ECF No. 32-14 ¶ 4.

New submitted the patient log note as directed in the afternoon on January 15. Dr.

3

Howard reviewed the document to confirm, in her view, that New committed "gross misconduct." ECF No. 32-5 ¶ 11. Grimes and Dr. Howard then informed New of the FHC physician-owners' decision to terminate her. *Id.*; ECF No. 32-7 at 38–39 (New confirming that Grimes said the termination was "due to what happened yesterday").

On August 19, 2017, New filed this action against FHC and Dr. Howard, alleging overtime wage violations of the Fair Labor Standards Act ("FLSA") and Maryland Wage Payment and Collection Law ("MWPCL") and retaliation under the FLSA. *Id.* ¶¶ 34–37, 44–47. New also alleges that Defendants violated the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") by providing insufficient notice of her rights to continuing healthcare coverage as required by COBRA. *Id.* ¶¶ 38–43. FHC and Dr. Howard now move for summary judgment on all counts. *See* ECF No. 32.

## II. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes

4

affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co*., 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

#### A. FLSA Retaliation (Count I)

New contends that her termination violated the FLSA anti-retaliation provision which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related" to the FLSA. 29 U.S.C. § 215(a)(3). Courts review the sufficiency of an FLSA retaliation claim under the same *McDonnell Douglas* framework applicable to Title VII retaliation actions. *Mould v. NJG Food Serv. Inc.*, 37 F. Supp. 3d 762, 778 (D. Md. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008). Under this framework, New must first establish a prima facie case that (1) she engaged in a protected activity; (2) Defendants took adverse action against her; and (3) a causal link exists between the two. *Darveau*, 515 F.3d at 340. If New establishes a prima facie case, "the burden shifts to [Defendants] to articulate a legitimate, non-retaliatory reason for the adverse action." *Mould*, 37 F. Supp. 3d at 779 (citing *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 458 (4th Cir. 2002)). If the Defendant articulates such a legitimate reason, the burden shifts back to New to raise a genuine dispute as to whether the proffered reason is mere

5

pretext for retaliation. *Id.*

The parties do not dispute that New's discharge amounts to an adverse employment action. Defendants rather argue New's claim fails on both the first and third prongs of the *McDonnell Douglas* prima facie case, and alternatively, that no evidence exists that her termination was pretextual. Viewing the record evidence most favorably to New, the Court must agree with Defendants.

Regarding the first prong—whether New engaged in protected activity—New points to the January 11 and 14 emails. ECF No. 1 ¶¶ 14, 36; ECF No. 37 at 7. Defendants respond that New's workplace complaints do not amount to protected activity because they do not allege "an actual violation" of the FLSA. ECF No. 32-2 at 9. The United States Court of Appeals for the Fourth Circuit, however, has left open whether "a FLSA retaliation plaintiff must allege facts demonstrating that he had an objectively reasonable belief that his employer violated the FLSA." *Darveau*, 515 F.3d at 341. Moreover, while intracompany complaints may constitute protected activity under the FLSA, the complaints must be "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Minor v. Bostwick Labs., Inc.*, 669 F.3d 428, 439 (4th Cir. 2012) (quoting *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011)).

Neither of the emails in question expressly claim violation for unpaid wages. Rather, New objected to the way FHC was entering holiday pay into the time system. *See* ECF No. 32-11 at 1, 5. In her January 11 email to Day, New asked if Day "could help [her] understand" the payroll system and noted her concern that the line item for eight hours of holiday pay would convey that she did not come to work that day. *Id.* at 5. Regardless of whether New reasonably

6

believed that the timesheet adjustment was an FLSA violation, this email does not provide nearly enough detail or context to put FHC on "fair notice" that these queries amounted to an FLSA complaint. *Minor*, 669 F.3d at 432. Thus, viewing the January 11 email most favorably to New, it does not constitute protected activity under the FLSA.

As to the January 15 email, even if the Court assumes the query amounts to protected activity, New has not marshalled any evidence that a causal connection exists between it and her termination. *See Jafari v. Old Dominion Transit Mgmt. Co.*, 913 F. Supp. 2d 217, 227 (E.D. Va. 2012), *aff'd*, 538 F. App'x 238 (4th Cir. 2013). To be sure, close "temporal proximity is sufficient to establish a prima facie causal connection between an employee's protected conduct and an employer's adverse action." *Mould v. NJG Food Serv., Inc.*, No. JKB-13-1305, 2013 WL 4506134, at *2 (D. Md. Aug. 21, 2013). But "[i]f the employer did not know of the protected activity, then even temporal proximity cannot save a plaintiff's claim." *Lee v. Safeway, Inc.*, No. RDB-13-3476, 2014 WL 4926183, at *11 (D. Md. Sept. 30, 2014) (citing *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

The record evidence demonstrates that none of the five physician-owners who terminated New had any knowledge of her complaints. ECF No. 32-2 at 12–13. In fact, Drs. Wollman-Rosenweld and Howard had decided that the nurse who abandoned the patient should be fired even without knowing which nurse in particular was responsible. ECF No. 32-5 ¶ 5; ECF No. 32-8 ¶ 3. Moreover, Dr. Wollman-Rosenwald emailed the physician-owners for their consent to New's termination before New emailed her letter to Grimes and Dr. Howard. See ECF No. 32-9 at 1. Because the die was cast as to New's firing before she sent the January 15 email, and because none of the physicians knew of the complaint prior to authorizing termination, the retaliation claim must fail as to causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268,

272 (2001) ("Employers . . . proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality."); *Phillips v. Raytheon Applied Signal Tech., Inc.*, No. ELH-11-3230, 2013 WL 5440802, at *28 (D. Md. Sept. 27, 2013), *aff'd*, 556 F. App'x 265 (4th Cir. 2014) ("When an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.") (citation omitted).

Alternatively, New has not marshalled any evidence that Defendants' articulated reason for her discharge is pretextual. Defendants bear the burden of "of production, not persuasion" in articulating legitimate grounds for New's firing. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007); *see also Robinson v. Affinia Grp., Inc.*, 815 F. Supp. 2d 935, 943 (W.D.N.C. 2011) ("Defendant's burden is low such that it need not persuade the court that it was actually motivated by the proffered reasons so long as it otherwise articulates a legitimate reason that is supported by the evidence.") (internal marks and citation omitted). Poor job performance is "widely recognized" as a legitimate basis for such adverse employment decisions. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

The record demonstrates that New was fired for abandoning her patient in a matter that was both contrary to FHC's legitimate employment expectations and dangerous for the patient. ECF No. 32-2 at 14–15. New admits that the patient was kept for observation as a "safety precaution . . . to ensure she did not experience any adverse reactions." ECF No. 32-6; *see also* ECF No. 32-7 at 6. Yet New left the office without ever having checked on the patient after giving the injection. ECF No. 32-7 at 7–9. Upon learning of the incident, Dr. Wollman-Rosenwald "was worried about the patient's well-being, and about all the possible serious

8

consequences to the patient and to FHC due to [New's] dereliction of duty." ECF No. 32-8 ¶ 2. Dr. Howard echoed this sentiment, having "never encountered such a situation before" during all her years of practice. ECF No. 32-5 ¶ 5. This incident, upon which all the physician-owners gave their consent to New's termination (*see* ECF No. 32-9), is sufficient to establish legitimate grounds for termination.

Further, no evidence exists that the stated reason for New's firing was mere pretext for retaliation. *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) ("[P]laintiff must prove '*both* that the reason was false, *and* that discrimination was the real reason.") (citation omitted). New does not even mention the incident in her Complaint or Opposition to Defendants' motion. Instead, she relies entirely on the temporal proximity between her letter to Grimes and her termination to argue that her firing must have been pretextual. ECF No. 1 ¶ 36; ECF No. 37 at 7. But temporal proximity alone does not rebut Defendants' legitimate, and uncontested, ground of termination. *See Yancey v. Nat'l Ctr. on Insts. & Alts.*, 986 F. Supp. 945, 956 (D. Md. 1997) (granting summary judgment where plaintiff did not present any evidence of pretext "beyond temporal proximity"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Viewing the evidence most favorably to New, she cannot demonstrate that Defendants' stated reason for her termination was pretextual. Defendants are entitled to summary judgment as to the FLSA retaliation claim.[2]

### B. FLSA and MWPCL Overtime Pay (Counts I and III)

In Counts I and III of her Complaint, New avers she "worked approximately 40 to 60

---

[2] Defendants also attempt to argue that summary judgment should be granted in their favor because New "neither consented to becoming a party to an FLSA action, nor filed required statutory written consent with the Court," citing to 29 U.S.C. § 216(b) as support. ECF No. 32-2 at 18. That FLSA provision, however, applies only to individuals opting in to FLSA collective actions as "party plaintiffs" and has no relevance here. *See Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008) (discussing Section 216(b)'s "'opt-in' scheme").

hours in October of 2015 on a workflow project which she was told to work on at home," alleging unpaid overtime wages under the FLSA and MWPCL. ECF No. 1 ¶¶ 37, 47. The FLSA requires employers to pay non-exempt employees overtime pay of at least one and one-half times the regular wage for hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a). Under the MWPCL, employers must pay "all wages due for work that the employee performed before the termination of employment." Md. Code Ann., Lab. & Empl. § 3-505.[3]

Defendants argue summary judgment is warranted because they had no knowledge of New's alleged "workflow project." ECF No. 32-2 at 17. To be liable for overtime wages pursuant to the FLSA, "an employer must have 'knowledge, either actual or constructive of [that] overtime work.'" *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 803 (D. Md. 2014) (quoting *Bailey v. Cty. of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996)). New bears the burden of establishing such knowledge. *Id.*

No record evidence supports that Defendants had the requisite knowledge. Indeed, New admitted in her deposition that she never requested overtime pay or otherwise informed Defendants that she was working from home. ECF No. 32-7 at 40, 44. Accordingly, New has failed to raise a genuine issue of material fact that Defendants had actual or constructive knowledge of her alleged overtime work. Defendants are entitled to summary judgment on New's overtime claims.

### C. COBRA Notice Claim (Count II)

In Count II, New alleges that Defendants failed to provide timely notice of "her rights to

---

[3] Technically, "[t]he MWPCL does not specifically address payment of overtime wages or provide a cause of action directed at employer's failure to pay overtime." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 670 (D. Md. 2011). However, even if New brought such claims under the Maryland Wage and Hour Law ("MWHL"), as she should have, the same FLSA analysis "applies equally." *Caseres v. S & R Mgmt. Co., LLC*, No. 12-01358-AW, 2013 WL 4010894, at *5 (D. Md. Aug. 5, 2013).

continue health coverage post-employment" under COBRA. ECF No. 1 ¶ 42. COBRA requires a group health plan sponsor to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event" an option of "continuation coverage under the plan." 29 U.S.C. § 1161. A "qualifying event" triggering the notice requirement includes termination so long as the grounds for such termination did not rest on the "employee's gross misconduct." 29 U.S.C. § 1163(2). Once a "qualifying event" occurs, the employer has 30 days to notify the administrator, who in turn must notify the qualified beneficiary within 14 days. 29 U.S.C. § 1166(a)(2), (c). If the employer is also the plan administrator, the implementing regulations provide the employer 44 days to provide notice under COBRA. 29 C.F.R. § 2590.606–4(b).

It is undisputed that FHC did not send New timely notice of her right to request continued coverage. ECF No. 32-2 at 7. FHC did, however, continue to pay for New's health insurance coverage following her discharge between January and May of 2016. ECF No. 32-5 ¶ 16; ECF No. 32-7 at 27. New also applied for and received Medicaid which was awarded retroactively beginning June 1, 2019. ECF No. 32-7 at 28–29. As a result, New never went without health insurance coverage. *Id.* at 29.

Defendants contend that New's COBRA claim fails as a matter of law because New had been fired for "gross misconduct," thus falling under the exception to the "qualifying event" that prompts the notification requirement. COBRA does not define "gross misconduct," and "courts have diverged significantly as to what rises to that level." *Middlebrooks v. Godwin Corp.*, No. 10-1306 AJT/JFA, 2012 WL 405080, at *4 (E.D. Va. Feb. 7, 2012), *aff'd*, 474 F. App'x 916 (4th Cir. 2012). Within this Circuit, at least one court has broadly defined gross misconduct as behavior that "is so outrageous that it shocks the conscience." *Zickafoose v. UB Servs., Inc.*, 23

11

F. Supp. 2d 652, 655 (S.D. W. Va. 1998). While another views it as amounting to "carelessness or negligence of such a degree or recurrence as . . . to show an intentional and substantial disregard of the employer's interests or the employees [sic] duties and obligations to his employer." *Bryant v. Food Lion Inc.*, 100 F. Supp. 2d 346, 376 (D.S.C. 2000), *aff'd*, 8 F. App'x 194 (4th Cir. 2001) (quoting *Paris v. F. Korbel & Bros., Inc.*, 751 F. Supp. 834, 838 (N.D. Cal. 1990)). And yet another has determined that the conduct must be "substantially beyond mere negligence, carelessness, or obstinacy" and must include "sufficient indicia of willfulness, wantonness, outrageousness, recklessness, intention or deliberate indifference." *Middlebrooks*, 2012 WL 405080, at *4.

On one point however, most courts agree: "gross misconduct" amounts to more than a single event of negligence, "simple mistake," or "mere inattention to detail." *Nero v. Univ. Hosps. Mgmt. Servs. Org.*, No. 04-1833, 2006 WL 2933957, at *4 (N.D. Ohio Oct. 12, 2006); *compare Moore v. Williams Coll.*, 702 F. Supp. 2d 19, 25 (D. Mass. 2010) (gross misconduct where plaintiff committed student aid fraud and falsified credentials), *aff'd*, 414 F. App'x 307 (1st Cir. 2011); *Nakisa v. Cont'l Airlines*, No. H-00-090, 2001 WL 1250267, at *3 (S.D. Tex. May 10, 2001) (employee used racial slur and threw apple at co-worker); *Zickafoose*, 23 F. Supp. 2d at 656 (employee "savagely beat his co-worker"); *Collins v. Aggreko, Inc.*, 884 F. Supp. 450, 454 (D. Utah 1995) (employee drove company vehicle while intoxicated); *Burke v. Am. Stores Employee Ben. Plan*, 818 F. Supp. 1131, 1138 (N.D. Ill. 1993) (employee stole from employer), *with Nero*, 2006 WL 2933957, at *1, 4 (no gross conduct where medical assistant made a number of mistakes, including filing lab results in the wrong patient chart, mislabeling a blood test, and failing to complete a referral).

On this record viewed most favorably to New, the Court cannot find as a matter of law

that New was terminated for gross misconduct. To be sure, New forgot about a patient and left for the day. Further, the evidence suggests, but does not conclusively establish, that New provided substandard medical care in failing to monitor the patient. But as soon as New learned of her mistake, she returned to the office. No evidence supports that New had been similarly derelict in the past, and fortunately, no harm came to the patient. The Court cannot conclude as a matter of law that New was fired for gross misconduct. New's termination is, therefore, a qualifying event, triggering COBRA's notice requirements.

Defendants next contend that New has failed to generate any evidence of damages. New qualified for Medicaid in September 2016, awarded retroactively, resulting in New paying no premiums or experiencing a gap in coverage. ECF No. 32-7 at 28–29. Further, New could not identify any treatment or service that was once covered under her prior insurance but is no longer under Medicaid. *Id.* at 33–34 (testifying that electrophysiologist services previously covered by private insurance now are performed by New's cardiologist whose services are covered under Medicaid). If anything, New "received a windfall worth thousands of dollars," because FHC continued to provide health insurance for five months after her discharge. ECF No. 32-2 at 22. Unlike the $400 monthly premium New had to pay when she was employed, FHC paid the entirety of the premium, over $700 per month, from January to May 2016. ECF No. 32-7 at 31–32; ECF No. 32-5 ¶ 16. Thus, the record viewed in favor of New's claim, simply does not support any actual damages flowing from the COBRA violation.

With respect to statutory damages, 29 U.S.C. § 1332 provides $110 per day, awarded at the Court's discretion. 29 U.S.C. § 1332(c)(1); 29 C.F.R. § 2575.502c-1. The purpose of the statutory penalty "is not to compensate participants for injuries, but to punish noncompliance." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 659 (4th Cir. 1996) (citing *Daughtrey v.*

13

*Honeywell, Inc*., 3 F.3d 1488, 1494 (11th Cir. 1993)). While "prejudice to the party requesting the documents is not a prerequisite to the imposition of penalties," such "prejudice is a factor that a district court may consider in deciding whether to impose a penalty," along with "whether the administrator acted in bad faith." *Id.* (citations omitted).

Defendants argue that New has not marshaled any evidence supporting an award of statutory damages. The Court agrees. Defendants underscore that customarily courts award such damages where the Defendant persistently refuses to provide documents or information to employees regarding COBRA coverage. *Middlebrooks,* 2012 WL 405080, at *7. No record evidence demonstrates any similar evidence of FHC intentionally refusing to provide notice or otherwise acting in bad faith at any other time. ECF No. 32-10 at 12. The notice failure was not part of a larger pattern or practice of consistent COBRA violations, and New has not generated any evidence that this particular notice failure prejudiced her. The Court, therefore, grants summary judgment in Defendants' favor as to damages.

### D. MWPCL Paid Time Off (Count III)

Finally, New asserts she is entitled to "96 hours of earned paid time off (PTO)" from FHC under the MWPCL. ECF No. 1 ¶ 44. While the MWPCL requires employers to pay "all wages due for work that the employee performed" prior to termination (Md. Code Ann., Lab. & Empl. § 3-505(a)), the law does *not* require employers to pay accrued leave if:

> (1) the employer has a written policy that limits the compensation of accrued leave to employees;
> (2) the employer notified the employee of the employer's leave benefits in accordance with § 3-504(a)(1) of this subtitle; and
> (3) the employee is not entitled to payment for accrued leave at termination under the terms of the employer's written policy.

*Id.* § 3-505(b).

Defendants argue that under the terms of FHC's written PTO policy, FHC does not owe

14

New any further PTO beyond what they have already paid. ECF No. 32-2 at 25. FHC's PTO policy states that "[t]he amount of PTO depends on how long the employee will be employed that year." ECF No. 32-18 at 1. The policy continues, "when an employee leaves the practice, for any reason, PTO will be prorated to what would have been earned to that date." *Id.*

It is undisputed that New was subject to this PTO policy. ECF No. 32-7 at 43. Further, New was terminated on January 15, 2016, only 15 days into the calendar year, and so was "due less than a half day of PTO," totaling $53.86. ECF No. 32-5 ¶ 17. As to the $53.86, although FHC erroneously issued a check for a full year of PTO, FHC subsequently sent New a check for the prorated amount. ECF No. 32-2 at 26 n.9; ECF No. 32-7 at 42 (New Deposition); ECF No. 32-22 (copy of second check). New argues now that she could not cash the check for the $53.86 "because it was unsigned." ECF No. 32-7 at 42. The Court cannot ascertain from the record whether this amount was actually paid to New. Accordingly, within fourteen (14) days, the parties shall submit a joint status report informing the Court as to the status of payment for the $53.86 owed to New.[4]

## IV. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 32) is GRANTED. A separate Order follows.

 7/1/2019                                             /S/
Date                                          Paula Xinis
                                              United States District Judge

---

[4] Because the Court is granting summary judgment in favor of Defendants as to all counts, the Court declines to address Defendants' argument regarding Dr. Howard's personal liability. *See* ECF No. 32-2 at 26–31.